IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Cv. No. 11-1066-JDB-egb<br>Cr. No. 08-10038-1-JDB |
| EDWARD THARPE, | |
| Defendant. | |

---

ORDER ADDRESSING PENDING MOTIONS
ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255
ORDER DENYING CERTIFICATE OF APPEALABILITY
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
ORDER DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

---

On March 17, 2011, Defendant, Edward Tharpe, Bureau of Prisons register number 22169-076, an inmate at the United States Penitentiary II in Coleman, Florida, filed a *pro se* motion pursuant to 28 U.S.C. § 2255, accompanied by a declaration under penalty of perjury and a legal memorandum. (Docket Entry ("D.E.") 1.)

On September 23, 2011, Tharpe submitted a motion for an evidentiary hearing and the appointment of counsel. (D.E. 2.) On August 20, 2012, he filed a motion for a show cause order by the Court. (D.E. 4.) Because Defendant's § 2255 petition will be denied for the reasons stated *infra*, these motions are DENIED.

On March 17, 2008, a federal grand jury in this district returned a three-count indictment against Tharpe and two co-

defendants, Pam Wilson and LaToya Wilson.  (Indictment, <u>United States v. Tharpe</u>, No. 08-10038-1-JDB (W.D. Tenn.), D.E. 1.)  The first count charged that, on or about March 7, 2008, all defendants, aided and abetted by each other, committed an armed robbery of Regions Bank in Martin, Tennessee in violation of 18 U.S.C. §§ 2113(a) & (d) and 2.  The second charged the defendants, aided and abetted by each other, with using a firearm during the armed bank robbery charged in count one in violation of 18 U.S.C. §§ 924(c) and 2.  The last count accused Tharpe, a convicted felon, of knowingly possessing a firearm on or about March 7, 2008.

The facts of the offenses are as follows:

5.  According to information received from the Police Department in Martin, Tennessee, on March 7, 2008, police officers responded to a bank robbery that occurred at Regions Bank, University Plaza Branch, in Martin. Police interviewed Ms. Clarkie Parsons (now Clarkie Graham) who advised that a male, later identified as Edward Tharpe, approached her teller counter and demanded money while producing a handgun.  Ms. Parsons identified the vehicle he departed in as a beige Jeep Wrangler, tag no. 427 BDS.  Police quickly located the automobile on the campus of the University of Tennessee at Martin, and the Jeep was determined to have been stolen from Ray Smith Auto in Camden, Tennessee on January 30, 2008. Police determined that the license plate on the vehicle had also been stolen from Benton County.

6.  Upon her capture, codefendant Latoya Wilson gave a written statement to investigators on March 8, 2008 indicating that upon their arrival in Nashville, Tennessee following the bank robbery, Edward Tharpe received a telephone call from his brother, Howard, who advised that police had already been to their residence. Latoya Wilson reported that both Mr. Tharpe and his brother laughed about this.  Additionally, Pam Wilson advised her and Mr. Tharpe to burn the Jeep, however,

Defendant Tharpe refused, as it was parked on the University of Tennessee at Martin campus.

7.  On March 10, 2008, Latoya Wilson gave a written statement to investigators indicating that she heard her mother, Pam Wilson, and Edward Tharpe talking about robbing a bank.  In her statement, Latoya Wilson indicated that on the day of the robbery, Defendant Tharpe woke her up and instructed her to come with him and Pam Wilson.  Upon entering his vehicle, Mr. Tharpe donned a gray wig, sunglasses and gloves.  They traveled to an apartment complex in a Buick and picked up a Jeep. Mr. Tharpe, driving the Jeep, directed Latoya Wilson to follow behind him in a Buick.  The Buick was subsequently left at another location.  They then drove to a gas station next to the Regions Bank in Martin, Tennessee, and Edward Tharpe went into the bank.  Approximately two minutes later, Defendant Tharpe exited the bank and got into the Jeep while Pam Wilson exhorted Latoya Wilson to "Go, go, go!"  Latoya Wilson and Pam Wilson followed Mr. Tharpe to a location where he exited the Jeep and got into the Buick.  They returned to their residence so Edward Tharpe could change his clothes, and they departed for Paris, Tennessee, and Camden, Tennessee a short time later.  On the way to Paris, Mr. Tharpe removed the bands off of the money and threw them out the window near a police car parked in a driveway while Pam Wilson counted the money.  While in Camden, Defendant Tharpe bought a light for the car, changed the oil in the vehicle, disposed of his purple shirt, and purchased crack cocaine.  Latoya Wilson, Pam Wilson, and Edward Tharpe then went to Nashville, Tennessee and rented a hotel room in Latoya Wilson's name as she had the only identification in their group.  While in Nashville, Defendant Tharpe purchased additional quantities of crack cocaine.  Latoya Wilson stated that she and Edward Tharpe went to a store to purchase cigarettes, and upon the arrival of police officers at that location, Mr. Tharpe threw a pistol into her lap, along with a quantity of U.S. currency.

8.  On March 10, 2008, Pam Wilson gave a written statement to investigators mirroring the information provided to police by her daughter, Latoya Wilson.

9.  On March 28, 2008, Edward Tharpe gave a written statement to investigators indicating that he used to [sic] rob the Regions Bank in Martin, Tennessee and the

3

Suntrust Bank in Nashville, Tennessee. According to Defendant Tharpe, two days before he committed the instant offense, his former cellmate, James Burns, gave him the Rossi .38 caliber pistol. Mr. Tharpe revealed that Pam Wilson was with him when he robbed the bank in Nashville and knew he had obtained the pistol from Mr. Burns. Mr. Tharpe reported that he purchased a wig and wore sunglasses, blue pants, and a purple shirt so as to avoid anyone recognizing him. Defendant Tharpe related that he instructed the bank teller to give him the money, and showed her the firearm he had in his possession. Mr. Tharpe denied pointing the gun at the bank teller. Edward Tharpe stated that Pam Wilson was in the vehicle driven by Latoya Wilson when he robbed the Regions Bank in Martin. On the way to Paris, Tennessee, Mr. Tharpe admitted that he and Pam Wilson threw the money bands out the car window, and obtained a hotel room in Nashville. Edward Tharpe advised police that once at the hotel, he purchased crack cocaine from James Burns.

10. The presentence writer spoke with Ms. Clarkie Parsons, the bank teller who was at the teller window when Defendant Tharpe committed the robbery. According to Ms. Parsons, after Mr. Tharpe entered Regions Bank, he leaned over the counter at her window and pointed his handgun at her and at the money while directing her to give him the money. She indicates that she was in fear for her life, and FBI Special Agent Mark Post, who investigated the offense, stated that the firearm was loaded.

11. Special Agent Mark Post indicated that Edward Tharpe was the most culpable individual involved in the instant offense. Agent Post reported that Defendant Tharpe obtained the firearm, planned the robbery with Pam Wilson, and took the money from the bank by force. Agent Post relates that Pam Wilson directed the actions of Latoya Wilson by instructing her to drive the vehicle, and planned the robbery with Edward Tharpe. Pam Wilson additionally removed bands from the stolen money and discarded the bands following the robbery during their flight. Agent Post indicates that Latoya Wilson's actions were limited to driving the "getaway" car and using her identification to obtain a hotel room in Nashville, Tennessee, following the robbery. Agent Post reveals that Latoya Wilson's involvement was not necessary for Edward Tharpe and Pam Wilson to complete the instant offense.

4

**Victim Impact**

12.   Agent Post reports that $9,500 was taken from
Regions Bank in Martin, Tennessee during the instant
offense.   Police recovered $6,361 of the stolen amount.
Bryan Clark, head of security for Regions Bank in
Memphis, Tennessee, verified the loss in this case and
relates that the bank is self-insured and was not
compensated by an insurance company for the loss.

(Presentence Report ("PSR") ¶¶ 5-12.)

On September 30, 2008, pursuant to a written plea agreement,
Tharpe appeared before this judge to plead guilty to counts one and
two of the indictment.   (Min. Entry, <u>United States v. Tharpe</u>, No.
08-100038-1-JDB, D.E. 64; Plea Agreement, *id.*, D.E. 65; Guilty Plea
Hr'g Tr., *id.*, D.E. 115.)   Paragraph seven of the plea agreement
provided, in pertinent part, that "[t]he defendant knowingly,
intelligently and voluntarily waives any rights to an appeal of his
conviction or sentence."   (Plea Agreement ¶ 7, *id.*, D.E. 65 at 2.)
At the hearing, Tharpe acknowledged that he was freely and
voluntarily waiving his right to appeal.   (Guilty Plea Hr'g Tr. at
14-15, *id.*, D.E. 115.)

The Court conducted a hearing on June 5, 2009 on Defendant's
objections to the recommendation in the PSR report that he be
sentenced as a career offender.   (Min. Entry, *id.*, D.E. 91;
06/05/2009 Sentencing Hr'g Tr., *id.*, D.E. 117.)   On June 19, 2009,
the Court issued an order holding that Tharpe's three prior felony
convictions for escape were "crime[s] of violence" under § 4B1.2 of
the United States Sentencing Guidelines ("U.S.S.G.").   (Order, *id.*,

5

D.E. 94.)  On July 9, 2009, Tharpe was sentenced as a career offender to a term of imprisonment of 327 months, to be served consecutively to a term of imprisonment imposed by the Criminal Court for Davidson County, Tennessee on a parole revocation, and to be followed by a five-year period of supervised release.  (Min. Entry, *id.*, D.E. 95; 07/09/2009 Sentencing Hr'g Tr., *id.*, D.E. 116.)[1]  Judgment was entered on July 10, 2009.  (J., *id.*, D.E. 96 & 97.)

Defendant filed a notice of appeal, and the Government filed a motion to dismiss the appeal because of the appeal-waiver provision of the plea agreement.  In an order issued on March 24, 2010, the Sixth Circuit Court of Appeals granted that motion and dismissed the appeal.  <u>United States v. Tharpe</u>, No. 09-5967 (6th Cir.).

---

[1]     Tharpe was sentenced to consecutive terms of 243 months on count one and eighty-four months on count two.

Pursuant to U.S.S.G. § 2B3.1(a), the base offense level for robbery is twenty.  Tharpe received a two-level enhancement because the property of a financial institution was taken, pursuant to U.S.S.G. § 2B3.1(b)(1), and a two-level enhancement because he was an organizer, leader, manager, or supervisor in the criminal activity, pursuant to U.S.S.G. § 3B1.1(c), resulting in an adjusted offense level of twenty-four.  However, because Defendant had three prior convictions for escape, which the Court found to be crimes of violence, he was sentenced as a career offender and his adjusted offense level was thirty-four.  U.S.S.G. § 4B1.1(b)(B).  Defendant received a three-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, resulting in a total offense level of thirty-one.  Given his criminal history category of VI, the guidelines provided a sentencing range of 188-235 months.  However, under U.S.S.G. § 4B1.1(c)(2)(B) & (3), where, as here, a defendant has been convicted of multiple counts and at least one of the counts is a conviction other than a conviction for 18 U.S.C. §§ 924(c) or 929(a), the combined guideline range is 262-327 months for defendants who received a three-level reduction under U.S.S.G. § 3E1.1.  The sentence on count two was a mandatory term of seven years, or eighty-four months.  18 U.S.C. § 924(c)(1)(A)(ii); U.S.S.G. § 5G1.2(a).  The total sentence imposed in this case for both counts was at the top of the guideline range.

In this § 2255 motion, Tharpe raises the following issues:

1.    Whether his attorney rendered ineffective assistance, in violation of the Sixth Amendment; and

2.    Whether he was denied the effective assistance of appellate counsel, in violation of the Sixth Amendment.

(D.E. 1 at 4, 5.)

Pursuant to 28 U.S.C. § 2255(a),

[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." Short v. United States, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted).

A § 2255 motion is not a substitute for a direct appeal. See Sunal v. Large, 332 U.S. 174, 178, 67 S. Ct. 1588, 1590, 91 L. Ed. 1982 (1947), reh'g denied, 332 U.S. 785, 68 S. Ct. 29, 92 L. Ed. 368 (Oct. 13, 1947). "[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings." Stone v. Powell, 428 U.S. 465, 477 n.10,

7

96 S. Ct. 3037, 3044 n.10, 49 L. Ed. 2d 1067 (1976), *reh'g denied,* 429 U.S. 874, 97 S. Ct. 197, 50 L. Ed. 2d 158 (Oct. 4, 1976). "Defendants must assert their claims in the ordinary course of trial and direct appeal." Grant v. United States, 72 F.3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200, 116 S. Ct. 1701, 134 L. Ed. 2d 800 (1996). This rule is not absolute:

> If claims have been forfeited by virtue of ineffective assistance of counsel, then relief under § 2255 would be available subject to the standard of Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In those rare instances where the defaulted claim is of an error not ordinarily cognizable or constitutional error, but the error is committed in a context that is so positively outrageous as to indicate a complete miscarriage of justice, it seems to us that what really is being asserted is a violation of due process.

Id. (internal quotation marks omitted).

Even constitutional claims that could have been raised on direct appeal, but were not, will be barred by procedural default unless the defendant demonstrates cause and prejudice sufficient to excuse his failure to raise these issues previously. El-Nobani v. United States, 287 F.3d 417, 420 (6th Cir. 2002) (withdrawal of guilty plea), *cert. denied*, 537 U.S. 1024, 123 S. Ct. 535, 154 L. Ed. 2d 435 (2002); Peveler v. United States, 269 F.3d 693, 698-99 (6th Cir. 2001) (new Supreme Court decision issued during pendency of direct appeal); Phillip v. United States, 229 F.3d 550, 552 (6th Cir. 2000) (trial errors). Alternatively, a defendant may obtain review of a procedurally defaulted claim by demonstrating his

"actual innocence." <u>Bousley v. United States</u>, 523 U.S. 614, 622, 118 S. Ct. 1604, 1611, 140 L. Ed. 2d 828 (1998).

After a § 2255 motion is filed, it is reviewed by the Court and, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts ("§ 2255 Rules"). "If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order." <u>Id.</u>  The movant is entitled to reply to the Government's response. Rule 5(d), § 2255 Rules.  The Court may also direct the parties to provide additional information relating to the motion. Rule 7, § 2255 Rules.

"In reviewing a § 2255 motion in which a factual dispute arises, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." <u>Valentine v. United States</u>, 488 F.3d 325, 333 (6th Cir. 2007) (internal quotation marks omitted), *cert. denied*, 552 U.S. 1217, 128 S. Ct. 1311, 170 L. Ed. 2d 127 (2008), *reh'g denied*, 552 U.S. 1305, 128 S. Ct. 1763, 170 L. Ed. 2d 557 (Mar. 31, 2008).  "[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." <u>Id.</u>  Where the

judge considering the § 2255 motion also presided over the criminal case, the judge may rely on his recollection of the prior case. Blanton v. United States, 94 F.3d 227, 235 (6th Cir. 1996), *reh'g & suggestion for reh'g en banc denied* (Oct. 1, 1996); *see also* Blackledge v. Allison, 431 U.S. 63, 74 n.4, 97 S. Ct. 1621, 1629 n.4, 52 L. Ed. 2d 136 (1977) ("[A] motion under § 2255 is ordinarily presented to the judge who presided at the original conviction and sentencing of the prisoner. In some cases, the judge's recollection of the events at issue may enable him summarily to dismiss a § 2255 motion . . . ."). Defendant has the burden of proving that he is entitled to relief by a preponderance of the evidence. Pough v. United States, 442 F.3d 959, 964 (6th Cir. 2006), *reh'g denied* (May 3, 2006).

In his first issue, Tharpe argues that his trial counsel rendered ineffective assistance in violation of the Sixth Amendment. (D.E. 1 at 4; D.E. 1-2 at 2-10.) Specifically, Defendant complains that his attorney (i) failed adequately to investigate the facts and law; (ii) mishandled the argument on whether the three prior escape convictions are crimes of violence; and (iii) failed to object to the sentence imposed, which was above the guideline range.

A claim that ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel is controlled by the standards stated in Strickland v. Washington. To demonstrate

deficient performance by counsel, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688, 104 S. Ct. at 2064. "A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance. The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Harrington v. Richter, ___ U.S. ___, ___, 131 S. Ct. 770, 787, 178 L. Ed. 2d 624 (2011) (internal citations & some quotation marks omitted).

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.[2] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., 104 S. Ct. at 2068. "It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. Counsel's errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Richter, ___ U.S. at ___, 131 S. Ct. at 787-88 (internal quotation

---

[2] "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant . . . ." Strickland, 466 U.S. at 697, 104 S. Ct. at 2069. If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. Id. at 697, 104 S. Ct. at 2069.

marks & citations omitted); *see also* id. at ___, 131 S. Ct. at 791-92 ("In assessing prejudice under Strickland, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . The likelihood of a different result must be substantial, not just conceivable."); Wong v. Belmontes, 558 U.S. 15, __, 130 S. Ct. 383, 390-91, 175 L. Ed. 2d 328 (2009) (per curiam) ("But Strickland does not require the State to 'rule out' [a more favorable outcome] to prevail.  Rather, Strickland places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different."), *reh'g denied*, ___ U.S. ___, 130 S. Ct. 1122, 175 L. Ed. 2d 931 (Jan. 11, 2010).

"Surmounting Strickland's high bar is never an easy task." Padilla v. Ky., ___ U.S. ___, ___, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010).

> An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.  It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence.  The question is whether an attorney's representation amounted to incompetence under prevailing

professional norms, not whether it deviated from best practices or most common custom.

Richter, ___ U.S. at ___, 131 S. Ct. at 788 (internal quotations marks & citations omitted).

The two-part test stated in Strickland applies to challenges to guilty pleas based on the ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 57-58, 106 S. Ct. 366, 369-70, 88 L. Ed. 2d 203 (1985). "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Id. at 56, 106 S. Ct. at 369 (internal quotation marks omitted). "[T]o satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59, 106 S. Ct. at 370; see also Padilla, ___ U.S. at ___, 130 S. Ct. at 1485 ("[T]o obtain relief on this type of claim, a [prisoner] must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.").[3]

---

[3]     The Supreme Court emphasized that,

[i]n many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than going to trial will depend

(continued...)

Most of the Defendant's argument is devoted to his disagreement with the Court's conclusions that his three escapes were crimes of violence within the meaning of U.S.S.G. § 4B1.2(a).  Defense counsel expended considerable effort attempting to persuade the Court not to adopt that position.  On January 7, 2009, defense counsel filed a position paper that argued at length, and with citations to appropriate legal authorities, that the Tennessee crime of escape is not a "crime of violence."  (Def.'s Position with Respect to Sentencing Factors at 1-8, United States v. Tharpe, No. 08-10038-1-JDB, D.E. 79.)  At the scheduled sentencing hearing on January 8, 2009, the parties presented their legal arguments, and the sentencing hearing was continued to await the Supreme Court's decision in Chambers v. United States, 555 U.S. 122, 129 S. Ct. 687, 172 L. Ed. 2d 484 (2009).  (Min. Entry, United States v. Tharpe, No. 08-10038-1-JDB, D.E. 80; *see also* Order at 3 n.1, *id.*, D.E. 94 ("On January 9, 2009, this Court heard arguments from counsel and continued the sentencing hearing pending the Supreme Court's decision in Chambers, in which the Supreme Court had granted

---

[3]     (...continued)
on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea.  This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.  Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.

Hill, 474 U.S. at 59, 106 S. Ct. at 370-71.

14

certiorari in order to address whether a defendant's failure to report in violation of Illinois law constituted a 'violent felony' under the [Armed Career Criminal Act].") After the issuance of the decision in Chambers, defense counsel filed two supplemental position papers on February 4, 2009, and April 17, 2009, respectively. (Supp. Position Regarding Sentencing, *id.*, D.E. 82; Second Supp. Position Regarding Sentencing, *id.*, D.E. 83.) All of defense counsel's position papers contained lengthy, detailed discussions of the relevant law as applied to Defendant's prior convictions for escape. Defense counsel also ably presented his objections to the career offender enhancement at the sentencing hearing on June 5, 2009. (06/05/2009 Sentencing Hr'g Tr., *id.*, D.E. 117.)

Tharpe argues that his attorney did not properly present the relevant law. (D.E. 1-2 at 8-9.) The cases cited by Defendant were presented in the briefs filed by defense counsel, including the second supplemental position regarding sentencing, which was filed after the Sixth Circuit's decision in United States v. Ford, 560 F.3d 420 (6th Cir. 2009).[4] Defendant has not identified any relevant case that his attorney failed to cite, or any argument that he failed to make, that was reasonably likely to have resulted in a

---

[4]    Tharpe also cites Johnson v. United States, ___ U.S. ___, 130 S. Ct. 1265, 176 L. Ed. 2d 1 (2010), which was issued after entry of judgment. (D.E. 1-2 at 6.) Johnson, which held that a prior battery conviction under Florida law was not a violent felony within the meaning of the Armed Career Criminal Act, is not helpful in analyzing whether the escape convictions at issue were "crimes of violence" under the career offender enhancement.

holding that he was not a career offender.  The Court made its decision that the escape convictions at issue were crimes of violence after reviewing the applicable facts and the law, including all decisions identified by Defendant.  The Court also did its own legal research.

Tharpe also argues that, at the June 5, 2009 hearing, defense counsel permitted the Government's witness, Tony Wilkes, the Chief of Corrections at the Davidson County Sheriff's Office, to present false testimony about the level of security at the facilities from which Defendant escaped.  (D.E. 1-2 at 4-7.)  At the hearing, defense counsel argued at length that the Court was not entitled to consider live testimony to determine the nature of the convictions. (06/05/2009 Sentencing Hr's Tr. at 24-32, *id.*, D.E. 117.)  Although the witness was allowed to testify, the Court ultimately concluded "that consideration of such testimony may be error" because it "did nothing to identify facts admitted by [Tharpe] in entering any of his guilty pleas." (*Id.* at 12 n.4.)  Therefore, even if it were assumed that defense counsel was deficient in failing to challenge allegedly false testimony by Wilkes, Tharpe was not prejudiced because the Court did not rely on Wilkes' testimony in concluding that the three escapes were crimes of violence.  This issue is without merit.

Next, the inmate asserts that his attorney rendered ineffective assistance by failing to object to the 243-month sentence on count

one, which the inmate assumes is above the guideline range.  (D.E. 1-2 at 9-10.)  He also contends that his attorney was ineffective for failing to list this as an issue on the notice of appeal.  (*Id.*)  As previously discussed, the Defendant was sentenced under U.S.S.G. § 4B1.1(c)(2)(B) & (3), which provided an aggregate guideline range of 272 to 327 months.  This calculation was explained at paragraph eighty-two of the PSR.  Because the PSR report correctly calculated the guideline range, defense counsel was not ineffective for failing to object, and Defendant was not prejudiced by that failure.

As for the notice of appeal, Tharpe was not prejudiced by any failure to list all conceivable issues because the Sixth Circuit dismissed the appeal as barred by the appeal waiver.  To the extent Defendant complains that his attorney was ineffective for filing a notice of appeal that was subject to dismissal, it is *per se* ineffective assistance for an attorney to fail to comply with a client's request to file a notice of appeal.  *See* <u>Rodriquez v. United States</u>, 395 U.S. 327, 89 S. Ct. 1715, 23 L. Ed. 2d 340 (1969).  Counsel was required to file the notice of appeal and he did so.  Tharpe suffered no prejudice from the filing or the dismissal of the appeal.  This issue is without merit.

For all the foregoing reasons, the first issue lacks merit and is DISMISSED.

In his second issue, Defendant submits that he was denied the effective assistance of appellate counsel.  (D.E. 1 at 5; D.E. 1-2

at 10.)  The factual basis for this claim is not well developed.  On the form motion, he explains that "counsel waived the right to appeal, so blocked an appeal."  (D.E. 1 at 5 (irregular capitalization omitted).)  In his legal memorandum, Defendant asserted that "the Public Defender Office knew they had allowed an unconstitutional application of the Career Offendent [sic] status, waive the appeal, but then still filed an appeal.  This representation was either incompetent per se, knowing that movant had little knowledge of the law and his constitutional rights, or a continuation of the fraud rendered intentionally by defense-appellate counsel."  (D.E. 1-2 at 10.)  The Court has already addressed Defendant's claim that his attorney was ineffective for filing a notice of appeal that he knew would be dismissed because of the waiver.

To the extent Tharpe insists that his attorney rendered ineffective assistance by recommending that he enter into a plea agreement with an appeal waiver, Defendant has shown neither deficient performance nor prejudice.  At the change of plea hearing, Tharpe stated that he was satisfied with the representation provided by defense counsel.  (Guilty Plea Tr. at 3, <u>United States v. Tharpe</u>, No. 08-10038-1-JDB, D.E. 115.)  He testified that no one tried to force him to plead guilty.  (*Id.* at 8.)  Tharpe acknowledged the factual basis for the charges against him and stated that he was pleading guilty because he is guilty.  (*Id.* at 15-17.)  He stated

that he understood the charges against him, including the possible penalties, and had had an opportunity to discuss those charges with his attorney. (*Id.* at 5-7.)  He also testified that he understood the plea agreement. (*Id.* at 12.)  Defendant understood that he was waiving his right to appeal his sentence. (*Id.* at 14-15.)  Tharpe stated that, apart from conversations about how the advisory guidelines might apply to his case, no one had made a promise or prediction to him about what sentence he might receive were he to plead guilty. (*Id.* at 15.)

The inmate makes no claim that he did not understand the plea agreement or the possibility that he could be subject to a term of imprisonment as long as the sentence that was imposed.  He does not state that, if only he had realized that he could be sentenced as a career offender to a term of imprisonment of 327 months, there is a reasonable probability that he would have insisted on going to trial.

These omissions are important because there is objective evidence that the plea agreement was in Defendant's best interest. The evidence against Tharpe was strong because both he and his two co-defendants gave full and detailed confessions.  Moreover, had Defendant insisted on a trial, he would have lost the three-point reduction for acceptance of responsibility.  Under U.S.S.G. § 4B1.1(c)(2)(B) & (3), the total guideline sentencing range for a defendant convicted of multiple counts in which at least one of the

counts was a conviction other than one under 18 U.S.C. §§ 924(c) or 929(a) and in which there is no reduction under U.S.S.G. § 3E1.1 is 360 months to life.   Thus, by pleading guilty, Tharpe avoided a substantially higher guideline sentencing range.

The second issue is also without merit and is DISMISSED.

The motion, together with the files and record in this case "conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); *see also* Rule 4(b), § 2255 Rules.  The Court finds that a response is not required from the United States Attorney and that the motion may be resolved without an evidentiary hearing.  *See* Smith v. United States, 348 F.3d 545, 550 (6th Cir. 2003); Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999).  Defendant's conviction and sentence are valid and, therefore, his motion is DENIED.  Judgment shall be entered for the United States.

Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b).   No § 2255 movant may appeal without this certificate.

A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right, and the COA must indicate the specific issue(s) which satisfy the required showing.

28 U.S.C. §§ 2253(c)(2) & (3).  A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 1039, 154 L. Ed. 2d 931 (2003); *see also* Henley v. Bell, 308 F. App'x 989, 990 (6th Cir.) (per curiam) (same), *cert. denied*, 555 U.S. 1160, 129 S. Ct. 1057, 173 L. Ed. 2d 482 (2009).  A COA does not require a showing that the appeal will succeed.  Miller-El, 537 U.S. at 337, 122 S. Ct. at 1039; Caldwell v. Lewis, 414 F. App'x 809, 814-15 (6th Cir. 2011) (same).  Courts should not issue a COA as a matter of course. Bradley v. Birkett, 156 F. App'x 771, 773 (6th Cir. 2005), *reh'g en banc denied* (Jan. 10, 2006).

In this case, for the reasons previously stated, the issues raised by Defendant lack substantive merit and, therefore, he cannot present a question of some substance about which reasonable jurists could differ.  The Court therefore DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. §§ 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions.  Kincade v. Sparkman, 117 F.3d 949, 951 (6th Cir. 1997).  Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by

28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a).  Id. at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit.  Fed. R. App. P. 24(a)(1).  However, the Rule also provides that, if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court.  *See* Fed. R. App. P. 24(a)(4)-(5).

In this case, for the same reasons the Court denies a COA, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith.  Leave to appeal *in forma pauperis* is DENIED.[5]

IT IS SO ORDERED this 11th day of September 2012.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

---

[5]    If Defendant files a notice of appeal, he must also pay the full $455 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.

22